1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS RAMIREZ, | CASE NO. 1:12-cv-01109-AWI-SKO |
| Plaintiff, | **ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| | (Doc. No. 1) |
| KINGS MORTGAGE SERVICES, INC., et al., | |
| Defendants. | |
| _____/ | |

### I.   INTRODUCTION

On July 10, 2012, Plaintiff Luis Ramirez ("Plaintiff") field a complaint against Kings Mortgage Services, Inc., North American Title, Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems, Inc. and DOES 1 through 20 (collectively, "Defendants").   Plaintiff's complaint alleges claims for wrongful foreclosure, fraud, quiet title, violation of the Real Estate and Settlement Procedures Act ("RESPA"), violation of the Trust in Lending Act ("TILA"), and seeks declaratory relief.  (Doc. 1.)  For the reasons set forth below, Plaintiff's complaint is DISMISSED without prejudice and with 30 days leave to amend.

## II.   PLAINTIFF'S ALLEGATIONS

Plaintiff contends that he is the owner of property located at 504 Descanso Bay Circle, Tulare, California, 93291 (the "Property"). (Doc. 1, ¶ 13.)  Although Plaintiff does not plead any facts regarding when a Promissory Note ("Note") secured by a Deed of Trust on the Property was executed and recorded, he asserts that "Defendants unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein."  (Doc. 1, ¶ 3.)  Plaintiff contends that Kings Mortgage Service, Inc. ("Kings Mortgage") is the originator of "the loan," and  that Wells Fargo Bank, N.A. ("Wells Fargo") is the present "Master Servicer" of "the mortgage."  (Doc. 1, ¶¶ 9- 10.)  Plaintiff identifies "DOE 4" as "Real Estate Mortgage Investment Conduit Trust ("REMIC"), and asserts that DOE 5 is the Trustee for REMIC; both were apparently participants in securitization of the Note.  (Doc. 1, ¶ 11.) Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is the alleged beneficiary under the Deed of Trust associated with Plaintiff's Note. (Doc. 1, ¶ 12.)  As to DOE 2 and DOE 3, Plaintiff alleges that Kings Mortgage "sold, assigned and/or transferred its ownership interest in the [Note] related to the Property to DOE 2 at or about the time the original Note was executed by Plaintiff. Thereafter, DOE 2 sold the Note to DOE 3.  Finally the Note was sold to DOE 4 . . . . "  (Doc. 1, ¶ 22.)

Plaintiff asserts that Kings Mortgage attempted to assign the Note, but did so in a manner that separated the Note from the Deed of Trust.  "As a result of this separation, the Deed of Trust or mortgage no longer secures the original note." (Doc. 1, ¶ 29.)  Plaintiff fails to set forth any facts indicating when the Property will be or has been foreclosed upon, but asserts that because of the "separation of ownership of [the] Note after sale by  [Kings Mortgage], the beneficiary of the Deed of Trust no longer had any legal relationship with the Note.  Therefore[,] neither the original beneficiary of the Deed of Trust nor any purported assignees of the Deed of Trust to any other parties have the legal right to foreclose on the [P]roperty."  (Doc. 1, ¶ 31.)

Plaintiff also alleges that MERS is not legally entitled to transact any business in the State of California because it is no longer a valid legal entity having changed or amended its corporate

name to MERSCORP, Inc. on May 12, 2003. (Doc. 1, ¶ 32.) Thus, any and all actions taken by "MERS" after 2004 are legally void because it was required to transact all business as "MERSCORP." (Doc. 1, ¶ 32.)

Plaintiff contends, further, that the Note was not securitized properly when it was transferred to DOE 5, who was acting as the Trustee for the "Securitized Trust." (Doc. 1, ¶ 33.) Plaintiff asserts that the "PSA" required that "each Note or Deed of Trust had to be endorsed and assigned, respectively to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date. Therefore, according to Plaintiff, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

Plaintiff's fraud cause of action is predicated on allegations that Wells Fargo has collected more than $19,000.00 in mortgage payments from Plaintiff, despite the fact that the Note is owned by DOE 4. (Doc. 1, ¶ 75.) Plaintiff alleges that Defendants materially misrepresented that Wells Fargo had the right to collect mortgage payments and did so to induce Plaintiff to rely on the misrepresentations and make mortgage payments to Wells Fargo. (Doc. 1, ¶ 76.)

Regarding Plaintiff's RESPA claim, Plaintiff asserts that Kings Mortgage paid to an unidentified defendant (labeled DOE 7 by Plaintiff) "a [yield spread premium] on Plaintiff's loans and no Defendant offered Plaintiff lower upfront fees for this YSP payment." (Doc. 1, ¶ 100.) Plaintiff asserts that this fraudulently placed Plaintiff into a more expensive loan than Plaintiff "was in prior to meeting the Defendants or should have been placed into based upon Plaintiff's credit score or income." (Doc. 1, ¶ 100.)

Finally, in support of Plaintiff's claim for violation of TILA, 15 U.S.C. § 1641(g), he alleges that Defendants failed to provide him with sufficient 30-day notice of the assignment of the Note and the Deed of Trust at issue. (Doc. 1, ¶ 113.)

///

///

///

///

3

### III.   DISCUSSION

**A.    Applicable Standards**

    **1.    Screening Standard**

In cases where the plaintiffs are proceeding *in forma pauperis*, the Court is required to screen each case and shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue, or the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

    **2.    Legal Standard**

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).   Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint for failure to comply with Federal Rule 9(b). *See Vess v. Ciba-Geigy Corp, USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

4

mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004)). Claims subject to Rule 9(b) pleading requirements must also satisfy the ordinary pleading requirements of Rule 8.

**B.    Plaintiff's Claims**

**1.    First Cause of Action for Wrongful Foreclosure**

Plaintiff's theory of his claim for wrongful foreclosure appears predicated on several grounds which are somewhat unclear. Plaintiff asserts that Kings Mortgage

> failed to transfer the physical Note to DOE 4 or to provide said Note to DOE 4 in bearer form. Therefore, Plaintiff alleges that the Defendants, and each of them, cannot show proper receipt, possession, transfer, assignment and/or ownership of the Plaintiff's original Promissory Note and Deed of Trust, resulting in an imperfect security interest and claim against Plaintiff's title.

(Doc. 1, ¶ 24.) Plaintiff summarizes the facts upon which his claim is based as follows:

(a)    After originating the loan, [Kings Mortgage] sold Plaintiff's Note to DOE 2 and does not own the Note originally signed by the Plaintiff.

(b)    Thereafter, DOE 2 sold the Note to DOE 3.

(c)    After the sale of the Promissory Note to DOE 3, neither [Kings Mortgage] nor DOE 2 retained any interest in the subject Note. Therefore, the Deed of Trust/mortgage became invalid[.]

(d)    After the sale of the Note to DOE 2, [Kings Mortgage] retained ownership of the Note due to the fact that the Note was never legally transferred to DOE 2 or to any other legal entity due to the negligent handling of the Note in question.

(e)    Neither DOE 4 nor any other party to this transaction has legal ownership of the Note due to the fact that DOE 4 never received an endorsed assignment of the Note from [Kings Mortgage] or ever took legal possession of the Note[.]

(f)    Plaintiff further alleges that the original Deed of Trust that secured the Promissory Note listed MERS as the beneficiary and [North American Title] as the original Trustee.

(g)    Plaintiff alleges that when [Kings Mortgage] sold the Note to DOE 2 the original Note was separated from the Deed of Trust or mortgage. As a result of this separation, the Deed of Trust or mortgage no longer secures the original Note.

(h)     Plaintiff alleges that MERS does not have the legal right to substitute in a new Trustee for the Deed of Trust or mortgage instrument since only the owner of the Note has that power.  Plaintiff alleges that MERS has never been given any written instructions by the current owner(s) of the Note to substitute out the original Trustee in favor of a substitute Trustee of the Deed of Trust.

(i)     Plaintiff alleges that MERS does not have the legal right to transfer the Deed of Trust or mortgage instrument due to the fact that MERS does not own the Note and therefore cannot legally convey title of the Deed of Trust or mortgage instrument to a third party.  In addition, only the Trustee of the Deed of Trust has the power and authority to assign the legal ownership of the Deed of Trust to a third party.  MERS has never been appointed the Trustee of the Deed of Trust.

(Doc. 1, ¶ 29.)

As an initial matter, Plaintiff has pled none of the details related to the foreclosure process. He has not alleged when he signed the Note or the Deed of Trust, the amount of the Note, when Plaintiff's default under the Note occurred, which entity initiated the foreclosure process, when a Notice of Default was recorded, whether a Notice of Trustee's Sale has been recorded, or the date when a Trustee's Sale or nonjudicial foreclosure is to occur.  The lack of such facts renders the complaint vague.

### a.     Possession of the Original Note

To the extent Plaintiff is alleging that Defendants were required to possess the original Note to foreclose on the Property (Doc. 1, ¶ 24), this is not a legally viable theory supporting a wrongful foreclosure claim, at least where the actual existence of the Note is not disputed, a copy of the Note is provided, and its accuracy is not disputed by the wrongful-foreclosure plaintiff.  *Neal v. Juarez*, No. 06-cv-0055 J(JMA), 2007 WL 2140640 (S.D. Cal. July 23, 2007), *judgment aff'd summarily*, 301 F. App'x 683 (9th Cir. 2008) (unpublished memorandum decision).  "It is well established that there is no requirement under California law that the party initiating foreclosure be in possession of the original note." *Clark v. Countrywide Home Loans, Inc*., 732 F. Supp. 2d 1038, 1043 (E.D. Cal. 2010); *see also Palmerin v. Bank of New York Trust Co.*, 1:12-cv-00139-LJO-DLB, 2012 WL 393650, at *5 (E.D. Cal. Feb. 6, 2012); *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) ("It is well-established that non-judicial foreclosures can be commenced without producing the original promissory note"); *Putkkuri v. Recontrust Co.*, No. 08-cv-1919 WQH, 2009

WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) ("Production of the original note is not required to proceed with a non-judicial foreclosure."); *Candelo v. NDex West, LLC*, No. 1:08-cv-1916-LJO-DLB, 2008 WL 5382259, at *4 (E.D. Cal. Dec. 23, 2008) ("No requirement exists under the statutory framework to produce the original note to initiate non-judicial foreclosure."). Plaintiff's complaint acknowledges the Note at issue and does not challenge its accuracy. Thus, this theory of wrongful foreclosure is not tenable.

### b.    Separation of the Note and the Deed of Trust

To the extent Plaintiff is alleging that the Note may not be transferred if it is physically separated from the Deed of Trust, the Ninth Circuit has indicated that a mortgage is unenforceable only if a promissory note and a deed are "irreparably split." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011). In *Cervantes*, the plaintiffs argued that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and thus, no party is in a position to foreclose. *Id.* The court disagreed with the plaintiff and held that "the notes and deeds are not irreparably split:  the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders." *Id.* Here, Plaintiff has similarly failed to allege how there has been any irreparable splitting of the Note and the Deed of Trust.

### c.    Securitization of the Note and the Deed of Trust

Plaintiff also alleges that the Note and Deed of Trust were ultimately securitized into a Securitized Trust that was formed by the execution of a Pooling and Servicing Agreement ("PSA"). (Doc. 1, ¶ 33.) Plaintiff asserts that the Note and the Deed of Trust were not properly assigned and transferred under the terms of the PSA. Specifically, "neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date." (Doc. 1, ¶ 35.) Plaintiff contends that any assignments of the Deed of Trust beyond the specified closing date under the PSA are void. (Doc. ¶ 35.) Plaintiff also contends that, even if the Deed of Trust had been transferred timely, the Note could not have been transferred according to the terms of the PSA because the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party. (Doc. 1, ¶ 36.)

1    Beyond that Plaintiff alleges neither the terms nor the closing date of the PSA, Plaintiff also

2    fails to allege how he has any standing to challenge violations of the terms of the PSA.  In *Junger*

3    *v. Bank of America, N.A.,* the district court rejected the plaintiff's allegations that "defendants failed

4    to adhere to the January 31, 2006, deadline for transferring the note as required by the pool servicing

5    agreement ('PSA') that governed the securitization of the note."  CV 11-10419 CAS VBKx, 2012

6    WL 603262, at *1 (C.D. Cal. Feb 24, 2012).  The court concluded "that plaintiff lacks standing to

7    challenge the process by which his mortgage was (or was not) securitized because he is not a party

8    to the PSA."  *Id.* at *3.  Similarly, in *Almutarreb v. Bank of New York Trust Co.*, *N.A.*, No. C-12-

9    3061 EMC, 2012 WL 4371410, at * 2 (N.D. Cal. Sept. 24, 2012), the court rejected similar

10   allegations finding that, because the plaintiffs in that case were not parties to the PSA, they lacked

11   standing to challenge the validity of the securitization process, including whether the loan transfer

12   occurred outside the temporal bounds prescribed by the PSA. (citing *Sami v. Wells Fargo Bank*, C

13   12-00108 DMR, 2012 WL 967051, at *5-6 (N.D. Cal. Mar. 21, 2012) (rejecting claim that Wells

14   Fargo failed to transfer or assign the note or deed of trust to the Securitized Trust by the "closing

15   date," and that, therefore, under the PSA any alleged assignment beyond the specified closing date

16   is void because the plaintiff lacked standing)); *Bascos v. Fed. Home Loan Mortg. Corp.*, CV 11-

17   3968-JFW JCx, 2011 WL 3157063, at *6  (C.D. Cal. July 22, 2011) ("To the extent Plaintiff

18   challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its

19   securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of

20   the loan as he is not an investor of the loan trust.")).

21   Additionally, as noted by the court in *Almutarreb*, Defendants do not lose the ability to

22   exercise their authority under the deed of trust due to any securitization.  2012 WL 4371410, at * 2

23   (citing *Benham v. Aurora Loan Servs.*, No. C-09-2059 SC, 2009 WL 2880232, at *3 (N.D. Cal. Sept.

24   1, 2009) ("Other courts in this district have summarily rejected the argument that companies like

25   MERS lose their power of sale pursuant to the deed of trust when the original promissory note is

26   assigned to a trust pool.")).  Plaintiff's allegations of wrongful foreclosure contain no statement that

27   he is *not* in default under the terms of the Note or that any Defendant has acted in error with respect

28   to the amount owed on the loan.  Rather, Plaintiff appears to concede that he has defaulted under the

terms of the Note.  (Doc. 1, ¶ 58 ("Plaintiff alleges that the Note in question was paid off upon Plaintiff's default in payments as defined by the PSA . . . ."); ¶ 64 ("Therefore, the Note was originally paid in full by DOE 2 and later by DOE 2's insurance carrier . . . after Plaintiff defaulted on his mortgage obligations.").)

Further, to state a claim for wrongful foreclosure, Plaintiff must allege that *no* entity has the right to foreclose upon him, not simply that the wrong entity foreclosed upon him.  "An action for the tort of wrongful foreclosure will lie [only] if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304 (1983) (citing *Munger v. Moore*, 11 Cal. App. 3d 1 (1970)); *see also Parcray v. Shea Mortg. Inc.*, 1:09-cv-1942-OWW-GSA, 2010 WL 1659369, at *12-13 (E.D. Cal. Apr. 23, 2010).  Here, Plaintiff concedes that he is in default under the terms of the Note.  (Doc. 1, ¶ 58.)  Although Plaintiff asserts that no entity has standing to foreclose on the Property, his assertion is not predicated on the fact that Plaintiff has met his obligations under the Note.

### d.    MERS' Right to Appoint a Successor Trustee

As to Plaintiff's allegations that MERS does not have the legal right to substitute a successor Trustee under the Deed of Trust, there are no facts in the complaint regarding when MERS impermissibly substituted a Trustee or what language in the Deed of Trust indicated that MERS did not have that authority.  It is also unclear what role MERS held when the foreclosure process was initiated.

### e.    Wrongful Foreclosure Claim May Be Premature

Finally, Plaintiff's claim of wrongful foreclosure does not allege that a foreclosure sale has taken place.  "A lender or foreclosure trustee may be liable to the mortgagor or trustor for wrongful foreclosure only if the property was fraudulently or illegally sold under a power of sale contained in a mortgage or deed of trust." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. Aug. 9, 2010).  However, a wrongful foreclosure claim is premature prior to the foreclosure sale.  *Bogdan v. Countrywide Home Loans*, 1:09-cv-01055-AWI-SMS, 2010 WL

1241540, at *8 (E.D. Cal. Mar. 26, 2010) (quoting *Vega v. JP Morgan Chase Bank, N.A.*, 654 F.

Supp. 2d 1104, 1113 (E.D. Cal. 2009) ("[A] purported wrongful foreclosure claim is premature given

there has been no foreclosure of the property.  The wrongful foreclosure claim fails to allege a

cognizable cause of action in absence of a foreclosure sale.")).  Unless the foreclosure sale has

already taken place, Plaintiff's claim for wrongful foreclosure is premature even to the extent there

are, theoretically, ground upon which the claim could be predicated.[1]

If Plaintiff elects to amend this claim, he should specify the date that the foreclosure sale took

place.  Further, Plaintiff's theory related to the securitization of the Note and the Deed of Trust do

not constitute a legally viable grounds to seek wrongful foreclosure for the reasons stated above.

Thus, any amendment of this claim should not be predicated on Plaintiff's securitization theory.

Moreover, Plaintiff's theory that the Deed of Trust is no longer viable because it has been separated

from the Note is not legally sufficient as pled.  This claim is DISMISSED with 30 days leave to

amend.

### 2.     Second Cause of Action for Fraud

Plaintiff's second cause of action alleges that Defendants committed fraud.  (Doc. 1, ¶¶ 72-

79.)  Plaintiff alleges that Defendant Wells Fargo and "DOE 5" misrepresented to Plaintiff that they

were entitled to receive mortgage payments from Plaintiff because they had no "equitable, or actual

---

[1] Only one federal district court case applying California law has found that a foreclosure sale is *not* a predicate to a wrongful foreclosure claim under certain circumstances. *See Baldain v. Am. Home Mortg. Servicing, Inc.*, 2:09-cv-0931-LKK-GGH, 2010 WL 56143, at * 13 (E.D. Cal. Jan. 5, 2010) ("In at least some circumstances, California courts have allowed wrongful foreclosure claims to proceed even when there was not an actual foreclosure." (citing *Garretson v. Post*, 156 Cal. App. 4th 1508, 1515 (20007) )).  The facts in *Garretson*, however, are distinguishable and the case itself does not discuss whether a wrongful foreclosure claim can be stated prior to a foreclosure sale. In *Garretson*, after the plaintiff defaulted on a promissory note secured by a deed of trust on one of two properties, the defendant initiated nonjudicial foreclosure proceedings. 156 Cal. App. 4th at 1512.  After the plaintiff paid defendant's demand to avoid foreclosure, plaintiff filed a complaint asserting seven causes of action, including a claim for wrongful foreclosure.  In response to the complaint, the defendant filed an anti-SLAPP (strategic lawsuit against public participation) motion under California Code of Civil Procedure § 425.16.  *Id.*  The trial court denied the defendant's anti-SLAPP motion, concluding that a nonjudicial foreclosure does not involve constitutional rights or free speech.  *Id.*  Rather, it concerns a commercial transaction which is not protected activity under the anti-SLAPP statute.  *Id.*  On appeal, the appellate court affirmed, holding that nonjudicial foreclosure proceedings, including the notice of foreclosure, were not constitutionally protected activity under the anti-SLAPP statute.  *Id.*  While the trial court appeared to allow a wrongful foreclosure claim to proceed even though a foreclosure sale had not occurred, this issue was never expressly addressed by either the trial court or the appellate court.  Where there is no redemption of the alleged defaulted amount prior to foreclosure (unlike in *Garretson*), in the absence of a foreclosure sale, it is difficult to ascertain what damages would be suffered to support a claim.  In any event, the circumstances in this case do not appear to support the viability of a wrongful foreclosure claim in the absence of a foreclosure sale, as any resulting damages would be merely speculative.

beneficial interest in the Note or the property." (Doc. 1, ¶ 73.)  Plaintiff's allegations of fraud appear to be premised on a theory that no party is entitled to receive mortgage payments from Plaintiff "since the original Note has been paid off at least twice:  Once by DOE 2 when it purchased the Note and then again when the Note was paid off by default insurance taken out by DOE 4." (Doc. 1, ¶ 74.) Plaintiff also alleges that Defendants failed to disclose the material terms of the transactions between Kings Mortgage, DOE 2, DOE 3, DOE 4, and American Insurance Group.  (Doc. 1, ¶ 75.) According to Plaintiff, Wells Fargo has collected approximately "$19,000 in mortgage payments from Plaintiff despite the fact that the Note is owned by DOE 4." (Doc. 1, ¶ 75.)  Plaintiff contends that the material misrepresentations were made by all Defendants "with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and pay mortgage payments to [Wells Fargo] as well as to other parties." (Doc. 1, ¶ 76.)

The elements of a claim for fraud are as follows: (1) misrepresentation by way of a false representation, concealment, or non-disclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  *See Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)).   Under the requirements of Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  It is "established . . . that Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.  Rule 9(b) "requires more specificity [than Rule 8], including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764.

"'[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action' . . . . There must be a showing 'that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation' and 'that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment.'" *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1063 (E.D. Cal. 2010) (citing *Conrad v. Bank of Am.*, 45 Cal. App. 4th 133, 156, 157 (1996)).

The complaint must contain "facts to support each fraud element." *Saldate*, 686 F. Supp. 2d at 1065. Further, "in a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Id.* (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)).

Plaintiff's complaint fails to state a claim for fraud as Plaintiff's theory of misrepresentation is unclear. Further, Plaintiff has not alleged how he was damaged by making his mortgage payments to Wells Fargo. It is entirely unclear what entity is foreclosing on the Property and which Defendant held itself out improperly as having an interest in the Note. Plaintiff has also alleged no facts showing any Defendant's intent and knowledge of the alleged misrepresentation. The complaint "fails to satisfy [Rule] 9(b)['s] 'who, what, when, where and how' requirements . . . . The complaint makes bare reference to a general misrepresentation with no required details. The complaint makes no effort to allege names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Saldate*, 686 F. Supp. 2d at 1065. Plaintiff's complaint fails to set forth facts alleging falseness attributable to each Defendant and thus lacks facts to support each fraud element.

### 3.    Third Cause of Action for Quiet Title

California Code of Civil Procedure section 761.020 provides that a claim for quiet title shall be verified and shall include: (1) a legal description and street address of the subject real property; (2) the title of the plaintiff as to which determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. The complaint in an action to quiet title must be verified, unless the plaintiff is a public entity. *Id.*

In a quiet title action, the plaintiff must stand on the strength of his or her own title and not on the weaknesses of the defendant's title. *Millyard v. Faus*, 268 Cal. App. 2d 76, 82-83 (1968). Here, Plaintiff predicates his quiet title action on the alleged weaknesses of Defendants' interest in title, instead of the strength of his own title. Specifically, Plaintiff's quiet title claim appears to be

based on the allegation that Defendants failed to properly and timely transfer Plaintiff's Deed of Trust and Note into the PSA, and, therefore, they have no interest in Plaintiff's Deed of Trust or Note and no authority to enforce the Deed of Trust.  Not only has Plaintiff failed to establish that he has any standing to challenge this alleged breach of the securitization agreement governing the Trust, but Plaintiff has also failed to allege what facts establish his own title in the Property.  Specifically, Plaintiff concedes that he is in default under the terms of the Note.  (Doc. 1, ¶ 58 ("Plaintiff alleges that the Note in question was paid off upon Plaintiff's default in payments . . . . "); ¶ 64.)

Even assuming, *arguendo*, that Plaintiff had adequately alleged the elements of a quiet title action, a quiet title claim is doomed in the absence of Plaintiff's tender.  *Id*.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934); *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974) (trustor is unable to quiet title "without discharging his debt").   There is no allegation that Plaintiff has tendered or has a meaningful ability to tender his indebtedness under the Note; thus, Plaintiff cannot maintain a quiet title claim.

### 4.        Fourth Cause of Action for Declaratory Relief

Plaintiff's fourth cause of action states a request for declaratory relief.  (Doc. 1, ¶¶ 87-94.) Plaintiff claims that an actual controversy has arisen between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and Deed of Trust.  (Doc. 1, ¶ 88.)  Plaintiff claims that Kings Mortgage and DOES 2 through 4 do not have the authority to foreclose on the Property, and Plaintiff requests a judicial determination of the parties' rights, obligations, and interests in the Property.  (Doc. 1, ¶ 90.)

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (quoting *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966)).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  As explained in *Aetna Life Insurance Co. v. Haworth*,

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

300 U.S. 227, 240-41 (1937) (citations omitted).

Plaintiff's failure to state a cognizable claim demonstrates the absence of an actual controversy to support declaratory relief.  Plaintiff's request for declaratory relief is generally pled and is based on the ground that Defendants do not have the authority to foreclose on the Property. (Doc. 1, ¶ 89.)  Plaintiff's theories regarding how Defendants have no authority or legal standing to foreclose on the Property are not cognizable; thus, there is no basis to for declaratory relief. *Hinojosa v. Wells Fargo Bank*, No C-12-0483-EMC, 2012 WL 3313554, at *3 (N.D. Cal. Aug. 13, 2012) (quoting *Winding v. Cal-W. Reconveyance Corp.*, CV F10-0041-LJO-GSA, 2011 WL 221321, at *12 (E.D. Cal. Jan. 24. 2011) ("In the absence of a viable claim, the complaint fails to support declaratory relief.")).

Plaintiff further requests a determination of the validity of the Deed of Trust utilized to foreclose and seeks a judicial determination of whether any Defendant had the legal right to foreclose based upon the Deed of Trust or mortgage.  (Doc. 1, ¶ 91.)  Nothing in California's comprehensive statutory non-judicial foreclosure scheme permits declaratory relief to establish whether any Defendant has the right to foreclose on the Property. *See Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (2011).  In the absence of a viable claim and an actual controversy, the complaint fails to support declaratory relief and warrants dismissal.

### 5.    Fifth Cause of Action for Violation of the Real Estate and Settlement Procedures Act

Plaintiff alleges each Defendant violated 12 U.S.C. § 2607(a) and (b).  (Doc. 1, ¶¶ 95-108.) Plaintiff asserts that Defendant Kings Mortgage "paid to Defendants DOE 7 a [yield spread premium] on Plaintiff's loans and no Defendant offered Plaintiff lower upfront fees for this YSP

payment." (Doc. 1, ¶ 100.)  Plaintiff contends that "Defendants implemented their fraud scheme against Plaintiff and placed Plaintiff into a more expensive loan th[a]n Plaintiff was in prior to meeting the Defendants or should have been placed into based on the Plaintiff's credit score and income." (Doc. 1, ¶ 100.)  Specifically, Plaintiff alleges as follows:

> 102.   In the case at bar, the Defendants and each of them, engaged in goods/services that were not actually performed and where the payments were not actually related to the value of the goods/services because Defendants chose to implement their scheme as alleged above.
>
> 103.   Defendants acceptance of a YSP and/or other payments and Defendant [Kings Mortgage's] payment of that YSP or other payments was an unlawful kickback, unlawful fee splitting and/or an unearned fee under RESPA because it was not reasonably related to the performance of lawful services by the accepting Defendants. Instead of performing lawful services, the accepting Defendants implemented their fraud scheme as alleged above.
>
> 104.   Defendant [Kings Mortgage] should have known that the Defendants DOE 7 did not earn the YSP or other payments because, interalia, " . . . common industry practice is that lenders follow underwriting standards that demand a review of originations and therefore lenders typically know that brokers have performed the services required . . . . HUD's 2001-1 Policy Statement at 53055. If Defendant [Kings Mortgage] had reviewed Plaintiff's loan originations, including their loan applications, [Kings Mortgage] would have learned of the obvious red flags said application contained.

Section 8(a) of RESPA, 12 U.S.C. § 2607(a), provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." Section 8(b) of RESPA, 12 U.S.C. § 2607(b), provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Section 8 violations are further defined by 12 C.F.R. § 1024.15, "Prohibition against kickbacks and unearned fees."

The Department of Housing and Urban Development ("HUD") clarified its interpretation of Sections 2607(a) and (b) in 2001. *Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under section 8(b)*, 66 Fed. Reg. 53,052 (Oct. 18, 2001).

As originally set forth in HUD's 1999 Statement of Policy, HUD established a two-part test for

determining the legality of certain lender payments to mortgage brokers under RESPA:

> (1)  Whether goods or facilities were actually furnished or the services were actually performed for the compensation period and;
>
> (2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

As explained by HUD,

> One of the primary barriers to homeownership and homeowners' ability to refinance and lower their housing costs is the up front cash needed to obtain a mortgage.  The closing costs and origination fees associated with a mortgage loan are a significant component of these up front cash requirements.  Borrowers may choose to pay these fees out of pocket, or to pay the origination fees, and possibly all the closing fees, by financing them; i.e., adding the amount of such fees to the principal balance of their mortgage loan.  The latter approach, however, is not available to those whose loan-to-value ratio has already reached the maximum permitted by the lender.  For those without the available cash, who are at the maximum loan-to-value ratio, or who simply choose to do so, there is a third option.  This third option is a yield spread premium.
>
> Yield spread premiums permit homebuyers to pay some or all of the up front settlement costs over the life of the mortgage through a higher interest rate.  Because the mortgage carries a higher interest rate, the lender is able to sell it to an investor at a higher price.  In turn, the lender pays the broker an amount reflective of this price difference.  The payment allows the broker to recoup the up front costs incurred on the borrower's behalf in originating the loan.  Payments from lenders to brokers based on the rates of borrowers' loans are characterized as "indirect" fees and are referred to as yield spread premiums. [footnote omitted].
>
> A yield spread premium is calculated based upon the difference between the interest rate at which the broker originates the loan and the par, or market, rate offered by a lender.  The Department believes, and industry and consumers agree, that a yield spread premium can be a useful means to pay some or all of a borrower's settlement costs.  In these cases, lender payments reduce the up front cash requirements to borrowers.  In some cases, borrowers are able to obtain loans without paying any up front cash for the services required in connection with the origination of the loan.  Instead, the fees for these services are financed through a higher interest rate on the loan.  The yield spread premium thus can be a legitimate tool to assist the borrower.  The availability of this option fosters homeownership.
>
> . . .
>
> In determining whether a payment from a lender to a mortgage broker is permissibly under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid.  The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal.  The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually provided.

1   66 Fed. Reg. at 53,054.

2       Plaintiff's allegations regarding RESPA violations are conclusory and vague, containing little

3   factual information from which it can be ascertained which Defendants were in violation of RESPA

4   and how any Defendant violated Section 2607(a) and (b). For example, there are no details as to the

5   loan amounts, the application for the loan and the signing process, the YSP fees that were collected,

6   or what services were performed or not performed. *See Yu v. Utah Fin., Inc.*, No. C-08-01771

7   RMW, 2008 WL 3381485, at *3 (N.D. Cal. Aug. 8, 2008) (finding plaintiff adequately stated claims

8   under Section 2607(a) and (b), noting that Plaintiff had provided sufficient factual allegations setting

9   out the loan amounts, the application and signing process, and the processing, appraisal, and YSP

10  fees that were paid and collected). Notably, although Plaintiff alleges that there were "obvious red

11  flags" in the loan applications, Plaintiff never alleges any details to explain these "red flags."

12  Moreover, Plaintiff does not allege when the loan at issue was originated. This is relevant because

13  RESPA claims under Section 2607 are subject to a one-year statute of limitation. 12 U.S.C. § 2614.

14      Any amended RESPA claim must set forth sufficient factual allegations to ascertain the

15  involvement of each Defendant at the time settlement services related to Plaintiff's loan were

16  provided, when the settlement services were provided and the YSP fees collected, and Plaintiff's

17  theory as to why or how the YSP fees collected were impermissible under Section 2607.

18          **6.      Plaintiff's Sixth Cause of Action for Violation of the Truth in Lending Act,
                      15 U.S.C. § 1641(g)**
19

20      The Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g), states that "not later than 30 days

21  after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party,

22  the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such

23  transfer . . . " 15 U.S.C. § 1641(g)(1). A creditor is only liable for actual damages sustained as a

24  result of its alleged failure to provide written notice. *Beall v. Quality Loan Serv. Corp.*, 2011 WL

25  1044148, at *6 (S.D. Cal. Mar. 21, 2011). While Plaintiff alleges that Defendants did not notify him

26  of the transfer of ownership of the original Note pursuant to Section 1641(g), Plaintiff does not

27  provide any allegations that he suffered actual damages as a result of that failure. Without

28  allegations of actual damage, this claim fails. *Deerink v. Bank of New York Mellon, N.A.*, No 2:11-

cv-01735-MCE-EFB, 2012 WL 3234027, at * 5 (E.D. Cal. Aug. 6, 2012) ("Since Plaintiffs' damages are purely speculative and were not caused by any violation of § 1641(g), Plaintiffs' second cause of action [under TILA] fails.").   Moreover, Plaintiff does not allege how many transfers occurred, which Defendant was the creditor or the new owner or assignee of the debt such that they were required to provide Plaintiff notice under Section 1641(g), and when any such transfer occurred. Additionally, Plaintiff has not alleged that the TILA claims under Section 1641(g) were brought within one year from the date of the occurrence of the violation, as required by 15 U.S.C. § 1640(e).

In sum, Plaintiff's allegations are conclusory and provide so little detail that the claim is not cognizable.   Further, it cannot be ascertained if Plaintiff's claim is timely.

**C.      Plaintiff is Permitted 30 Days Leave to Amend the Complaint**

While the Court is mindful that Plaintiff is proceeding pro se, even construing the allegations in the complaint liberally, there is no cognizable claim. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) (court must construe the pleadings liberally and afford plaintiff any benefit of the doubt). Therefore, Plaintiff's complaint is dismissed without prejudice. However, Plaintiff will be given an opportunity to amend the deficiencies in the complaint.

Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.   As a general rule, an amended complaint supersedes the original complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc).   Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.   Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.   **If Plaintiff fails to file an amended complaint or fails to cure the deficiencies identified above, the Court will recommend that the complaint be dismissed with prejudice.**

///

///

///

///

**IV.   CONCLUSION AND ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.      Plaintiff's complaint is hereby DISMISSED without prejudice; and

2.      Within 30 days from the date of this order, Plaintiff shall file an amended complaint.

IT IS SO ORDERED.

Dated:   **November 8, 2012**                          **/s/ Sheila K. Oberto**
                                                        UNITED STATES MAGISTRATE JUDGE

19